[No. A068556. First Dist., Div. Four. Sept. 29, 1995.]

In re COURTNEY H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
COURTNEY H., Defendant and Appellant.

**COUNSEL**

Christopher R. Inama, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Peggy S. Ruffra, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ANDERSON, P. J.— ■ Today we are asked to determine whether the superior court commissioner in a juvenile delinquency matter has authority to commit a minor to the California Youth Authority (CYA) without a written stipulation of the parties litigant or, in the alternative, whether by their conduct the parties could be held to have impliedly consented to the commissioner sitting as a temporary judge. Applying the tantamount stipulation doctrine, we conclude that the commissioner did not act in excess of her authority in adjudicating this case and, therefore, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The San Mateo County District Attorney filed a petition on October 17, 1994, against appellant pursuant to Welfare and Institutions Code section 602,[1] alleging that the minor (1) possessed marijuana while in juvenile hall; and (2) escaped from juvenile court custody. The San Francisco District Attorney filed another petition while appellant was at large, alleging: (1) attempted grand theft of a firearm; (2) assault on a peace officer; (3) resisting arrest; and (4) giving a false name to a peace officer. After appellant admitted counts three and four, the San Francisco District Attorney dropped the first two counts and transferred the proceedings to San Mateo County. On December 14, 1994, in juvenile court before the San Mateo County Superior Court Commissioner, appellant admitted the escape allegation and the prosecutor dropped the drug charge. The commissioner adjudged appellant a ward of the juvenile court and committed him to CYA for a term not to exceed seven years and two months. The commissioner did not receive the express agreement of the parties to act as a temporary judge, but neither did the minor or his counsel object to the commissioner so acting. Appellant now appeals the commitment order, claiming for the first time that the commissioner lacked the authority to render such a judgment.

---

[1] Welfare and Institutions Code section 602 states as follows: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

## II. Discussion

### A. *Absent an Express or Implied Stipulation, the Commissioner, as a Subordinate Judicial Officer, Would Not Have the Authority to Preside Over the Instant Proceedings.*

#### (1) *The Commissioner Was Not a Juvenile Court Referee.*

We must decide whether the commissioner was acting in the capacity of a commissioner, juvenile court referee, or temporary judge. Under authority of the California Constitution (art. VI, § 22), "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." The commissioner herein was appointed as a commissioner by the San Mateo County Superior Court by order dated February 11, 1987, pursuant to Government Code section 70142.[2] The order provided for the commissioner's "general appointment" "to act as judge pro tempore with respect to all matters heard by her while sitting in any department of this Court to which she may be assigned." Furthermore, the order contained a "blanket order" assigning all actions and proceedings to her in her capacity as judge pro tempore, "unless otherwise expressly indicated."

A court commissioner is authorized, in general, to "[a]ct as temporary judge when otherwise qualified so to act and when appointed for that purpose, or by written consent of an appearing party." (Code Civ. Proc., § 259, subd. (e).) However, under the California Constitution, "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.) Taking the statute and the constitutional provision together, we infer that if a commissioner is given the authority to act as a temporary judge, that person must also obtain proper stipulation of the "parties litigant" in order to preside over a specific proceeding. (*Nierenberg* v. *Superior Court* (1976) 59 Cal.App.3d 611, 616 [130 Cal.Rptr. 847].) In addition, this interpretation leads to a better understanding by the parties of the forum in which they appear.

■ A court commissioner is a "different and separate statutory creature" from a juvenile court referee. (*In re Ian J.* (1994) 22 Cal.App.4th 833, 836

---

[2] We granted respondent's request to take judicial notice of two orders of the San Mateo County Superior Court. (Evid. Code, §§ 452, subd. (d), 459.) The first is the appointment order of February 11, 1987. The second is an order by the presiding judge of the San Mateo County Superior Court assigning court duties for 1994.

[27 Cal.Rptr.2d 728].) Welfare and Institutions Code section 247 provides for appointment of juvenile court referees as follows: "The judge of the juvenile court, or in counties having more than one judge of the juvenile court, the presiding judge of the juvenile court . . . may appoint one or more referees to serve on a full-time or part-time basis. A referee shall serve at the pleasure of the appointing judge, and unless the appointing judge makes his order terminating the appointment of a referee, such referee shall continue to serve as such until the appointment of [her] successor." Referees, like commissioners, are constitutionally limited to "subordinate judicial duties" under article VI, section 22 of the California Constitution. (*In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406].)

In addition, "A referee shall hear such cases as are assigned to him or her by the presiding judge of the juvenile court, with the same powers as a judge of the juvenile court, except that a referee shall not conduct any hearing to which the state or federal constitutional prohibitions against double jeopardy apply unless all of the parties thereto stipulate in writing that the referee may act in the capacity of a temporary judge. . . ." (Welf. & Inst. Code, § 248.) "No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court." (Welf. & Inst. Code, § 249.) Thus, while commissioners cannot perform other than "subordinate judicial duties," absent a stipulation of the parties, referees can do so as long as their decisions are approved by a juvenile court judge.

 An analysis of the appointment order and a review of the record reveals that although the commissioner herein "may be assigned to perform the duties of Juvenile Court Referee," she was not subsequently so assigned. Appellant correctly points out that a specific provision prevails over a general provision, but here there is no specific provision that acts to appoint her as a juvenile court referee. In fact, the record indicates that she considered herself a commissioner and not either a referee or a temporary judge.[3] We do not read the appointment order as ambiguous—absent a specific appointment as a referee, she is a commissioner or a temporary judge, depending on whether she meets the statutory requirement of obtaining stipulation of the parties litigant.

The order assigning duties for 1994 to the commissioner states that she "shall act as Juvenile Court Commissioner and shall perform all duties prescribed for said department by the rules of this court, and shall act as Commissioner of the Family Law Department and shall perform all other

---

[3]In the order signed by the commissioner, there were three boxes she could have checked to designate her status: "commissioner," "referee," or "judge." She chose the box marked "commissioner."

Pro Tem Judicial duties assigned by the presiding judge." Had this order authorized her to act as a juvenile court referee, the provisions of Welfare and Institutions Code sections 247 through 252 would apply to the instant proceeding. Under those circumstances, absent the stipulation of the parties litigant that she act as a temporary judge, she would have the authority to commit appellant to the CYA so long as a juvenile court judge approved that order.

To be sure, the superior court, through its orders of which we have taken judicial notice, assumes there is a such an office as a "juvenile court commissioner." However, "The Juvenile Court Law makes no provision for the use of *commissioners* in juvenile court." (*In re Mark L.* (1983) 34 Cal.3d 171, 176, fn. 4 [193 Cal.Rptr. 165, 666 P.2d 22], italics in original.) We decline, however, to change the duty order to read "referee" rather than "commissioner" where there is no ambiguity on its face and where there is no reflection of any intent to the contrary. The power to do so rests solely with the San Mateo County Superior Court. We therefore conclude that the commissioner was not acting in the capacity of a juvenile court referee.

(2) *Absent the Stipulation of the Parties Litigant, the Commissioner Would Not Have the Authority to Commit Appellant to the CYA.*

Although we have already determined that Welfare and Institutions Code sections 247-252, which apply to juvenile court referees, are not directly applicable to this proceeding, those statutes provide guidance with respect to the definition of "subordinate judicial duties." (Cal. Const., art. VI, § 22.) Welfare and Institutions Code section 249 requires approval by a juvenile court judge in cases where a minor is removed from his home by an order of a referee. Referees must also seek approval on decisions that implicate jeopardy protections. (Welf. & Inst. Code, § 248.)[4] In the case at bar the commissioner declared appellant a ward of the court, and ordered him removed from his home by committing him to the CYA. These actions were not subordinate judicial duties. (*In re Edgar M., supra,* 14 Cal.3d at p. 732.)

Although, if the commissioner were acting as a referee herein, she would have authority to take such action so long as the disposition was reviewed by a juvenile court judge (Welf. & Inst. Code, § 249), she did not have that authority as a commissioner, absent the stipulation of the parties or the appointment we have already concluded she did not receive.

---

[4]Both appellant and respondent correctly point out that since appellant admitted the allegations of the petition against him, the proceeding did not implicate appellant's constitutional double jeopardy protections. (*In re Carina C.* (1990) 218 Cal.App.3d 617, 624 [267 Cal.Rptr. 205].)

B. *Applying the Doctrine of Tantamount Stipulation, We Conclude That the Commissioner Was a Temporary Judge in the Instant Proceedings.*

Having now determined the scope of the commissioner's authority, we must now decide whether she obtained proper stipulation from the parties, either implied or express, to sit as a temporary judge. We conclude that she did.

"The power of a court commissioner to act as a temporary judge emanates solely from stipulation by the parties to the proceeding." (*Nierenberg* v. *Superior Court, supra,* 59 Cal.App.3d at p. 616; *People* v. *Tijerina* (1969) 1 Cal.3d 41, 48-49 [81 Cal.Rptr. 264, 459 P.2d 680]; Cal. Const., art. VI, § 21.) As discussed above, the "blanket order" authorizing the commissioner herein to act as a temporary judge presupposes that the constitutional and statutory requirements will be met (i.e., that the parties will stipulate to her temporary judge status). The record does not reflect, nor does either party contend, that either an oral or written express stipulation was made in these proceedings.

However, parties may also, by their conduct, impliedly stipulate that a commissioner may act as a temporary judge in a specific proceeding. (*In re Horton* (1991) 54 Cal.3d 82, 91 [284 Cal.Rptr. 305, 813 P.2d 1335]; *In re Mark L., supra,* 34 Cal.3d at pp. 178-179; *Estate of Soforenko* (1968) 260 Cal.App.2d 765, 766 [67 Cal.Rptr. 563].) In fact, it has been held that merely by intending to have the subordinate judicial officer decide the case, the parties may impliedly confer temporary judge status on the officer even without their knowledge that a stipulation is required. (*In re Julio N.* (1992) 3 Cal.App.4th 1120, 1123 [5 Cal.Rptr.2d 86], citing *In re Horton, supra,* 54 Cal.3d at p. 98.) "Under the 'tantamount stipulation' doctrine, the parties confer judicial power not because they thought in those terms; had they done so, the stipulation presumably would be express. Rather, an *implied* stipulation arises from the parties' common intent that the subordinate judicial officer hearing their case do things which, *in fact,* can only be done by a judge." (*In re Mark L., supra,* 34 Cal.3d at p. 179, fn. 6, italics in original.) The reasoning in this doctrine is simple: "An attorney may not sit back, fully participate in a trial and then claim that the court was without jurisdiction on receiving a result unfavorable to him." (*Estate of Lacy* (1975) 54 Cal.App.3d 172, 182 [126 Cal.Rptr. 432].)

Although a compelling argument could be made that parties never given the opportunity to stipulate cannot do so impliedly, we are bound by the above doctrine as explained by our Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d

937].) Certainly if the *Horton* court allowed a capital murder trial to be held before a commissioner acting under tantamount stipulation by the parties, it would likewise intend that the doctrine apply to a CYA commitment hearing. (*In re Horton*, *supra*, 54 Cal.3d 82.) Thus, we conclude that the commissioner had authority to preside over the instant proceedings and commit appellant to the CYA.

The judgment is affirmed.

Poché, J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 18, 1996. Mosk, J., was of the opinion that the petition should be granted.