Filed 10/7/14  In re Cayden S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CAYDEN S., a Minor. | D066095 |
| ROBERT K., | |
| Plaintiff and Respondent, | (Super. Ct. No. A59662) |
| v. | |
| CHRISTOPHER S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Edlene McKenzie, Commissioner.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Minella Law Group and Kathy A. Minella, for Plaintiff and Respondent.

Jamie A. Moran, under appointment by the Court of Appeal, for Minor.

Christopher S. appeals a judgment declaring his minor son, Cayden S., free from his custody and control under Family Code section 7822.[1]  That statute provides, in part, that a petition to free a child from a parent's custody and control may be granted where "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child."  (§ 7822, subd. (a)(3).)  Christopher contends the evidence does not support the court's finding that he intended to abandon Cayden.  Christopher further contends that he did not properly receive notice or stipulate to a court commissioner to preside over the proceedings.  Petitioner Robert K. opposes.  Cayden, through his appointed appellate counsel, joins in Robert's arguments.

We conclude the evidence supports the court's judgment and Christopher impliedly stipulated to the court commissioner.  We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Cayden was born in September 2008 in Indiana.  His parents, Christopher and Natalie D., were living together in a romantic relationship at the time.  Their relationship faltered, and they broke up two years after Cayden's birth.  Natalie moved with Cayden into her parents' home.  Natalie then filed an action for declaration of paternity, custody, visitation, and support in Indiana state court.  While that action was pending, Natalie and Christopher entered into a voluntary agreement (1) declaring Natalie and Christopher the

---

[1]    All further statutory references are to the Family Code unless otherwise stated.

biological parents of Cayden, (2) awarding full custody of Cayden to Natalie, (3) granting Christopher the right to visit Cayden one day every two weeks at Natalie's residence, and (4) requiring Christopher to make child support payments of $123 per week. The Indiana court approved the agreement and adopted it as its order.

Soon afterwards, Christopher filed a motion to modify the agreement, but he withdrew his request three days later. Two months later, Christopher filed a petition to hold Natalie in contempt over parenting time. The Indiana court determined that Christopher was actually seeking to modify his parenting time. It dismissed Christopher's petition after he failed to appear at the hearing. Two months after that, Christopher filed another petition to hold Natalie in contempt over parenting time. Again, however, Christopher was seeking to clarify his parenting time, not contempt. The Indiana court increased Christopher's visits to once during the week and every other weekend.

Christopher's visits with Cayden were inconsistent. He missed five of eight weekday visits and one of four weekend visits. When Cayden stayed with Christopher, he was often returned to Natalie in a disheveled condition, upset and needing his diaper changed. Christopher did not give Cayden any cards or gifts, except for one large bag of small toys on his third birthday.

Meanwhile, the State of Indiana filed a contempt petition against Christopher for failure to pay child support. The Indiana court found Christopher in contempt and issued a suspended sentence of 15 days in jail. At Natalie's request, the Indiana court also granted a protective order against Christopher based on threatening e-mails and text

3

messages he had sent.  The protective order prohibited Christopher from contacting Natalie except for communications about Cayden by e-mail.

Natalie met Robert and they began dating.  Natalie filed a notice of intent to relocate to San Diego, where Robert lived, with Cayden.  The notice included Natalie's new address in San Diego and was served on Christopher.  Christopher filed an opposition to Natalie's move, but he did not appear for the hearing.  The Indiana court allowed the move.

Nathalie and Robert were married in February 2012.  Natalie moved to San Diego shortly thereafter.  Christopher's last visit and contact with Cayden was in late February.

Also in February 2012, the Indiana court found that Christopher still had not complied with his child support obligations and ordered him to make further payments.  After Christopher failed to appear at a compliance hearing, the court issued another warrant for his arrest.  Christopher was sentenced to 15 days in jail.  In the years that followed, Christopher continued to have difficulty meeting his child support obligations.  He was later given a 30-day suspended sentence for contempt.

After Natalie's move to San Diego, Christopher filed a motion to set aside the protective order and modify custody.  He also filed a petition to find Natalie in contempt regarding visitation.  The Indiana court denied Christopher's motion regarding the protective order, but it told Christopher he could send a phone to Cayden to allow him to

4

call Cayden directly.[2] Christopher later withdrew his motion to modify custody, and the Indiana court denied his motion for contempt. The Indiana court authorized Christopher to have supervised visitation with Cayden in San Diego during the week of April 20, 2013. When his visitation week arrived, Christopher did not show up in San Diego. He e-mailed Natalie two days into the week and told her he would not be coming.

Although Christopher had Natalie's address, he did not write to Cayden or send him any cards or gifts. Christopher had not seen or spoken to Cayden since the move. His communication with Natalie consisted of sporadic e-mails inquiring generally about how Cayden was doing.

In March 2014, Robert filed the petition at issue in this appeal in San Diego County Superior Court. Robert's petition requested that Cayden be freed from Christopher's custody and control under section 7822, subdivision (a)(3). Robert alleged that he was Natalie's spouse, that he had been actively involved in Cayden's life since before their marriage, and that he wished to adopt Cayden. Robert further alleged that Christopher had left Cayden in Natalie's custody, with no provision for his support or communication for over a year, with the intent to abandon him. Christopher was served

---

2      Christopher did not send a phone to Cayden until 18 months later, after Robert had begun proceedings to adopt Cayden. Natalie received the phone, but Christopher still could not reach Cayden. After the filing of Robert's petition, Christopher went to court in Indiana to hold Natalie in contempt. The court granted the contempt citation and ordered Natalie to allow Christopher to talk with Cayden. However, Cayden did not like to speak on the phone. When Christopher called, Natalie answered and left the phone on the counter for Cayden. Cayden did not pick up.

5

in Indiana with a citation for freedom from parental custody and control, which notified him that the court had issued an order to show cause why Cayden should not be freed.

The San Diego County Health and Human Services Agency (the Agency) interviewed Christopher, Natalie, and Cayden. In its report to the court, the Agency recommended that Robert's petition be denied. The Agency stated, "[Christopher] has not had contact with his son since he moved to San Diego. . . . At this time, this social worker has been unable to establish [Christopher's] intent to abandon his son. It appears this case has been active in Court in Indiana since 2011. The ongoing issue has been visitation and contact. This social worker feels [Christopher] could have done more; however his intent appears to be clear over the last two years. Therefore, this social worker is requesting this petition be denied."

The Indiana court relinquished jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The San Diego Superior Court accepted jurisdiction and proceeded to trial. At trial, the court heard testimony from Natalie, her mother and sister, and Christopher. Natalie testified regarding the history of her relationship with Christopher, his visits and contact with Cayden, and his child support payments. Natalie's mother and sister testified primarily about the quality of Christopher's visits with Cayden in Indiana.

Christopher's testimony offered a different perspective of his relationship with Cayden. Christopher stated that he took care of Cayden and, after he and Natalie split, visited Cayden every weekend. After Natalie and Cayden moved to California, Christopher tried to find a way to see Cayden. He sent e-mails to Natalie asking how

Cayden was doing, but he rarely got a response. Christopher claimed to have sent a phone to Cayden seven months after the Indiana court suggested it. He testified that he had been behind on child support payments but had slowly been catching up over the last four months. At the time of trial, Christopher owed approximately $7,000 in past due child support payments.

The court received a number of documents into evidence, including records from the Indiana court regarding Cayden's custody and visitation, e-mails between Natalie and Christopher, and a visitation log Natalie maintained of Christopher's visits with Cayden in Indiana. After hearing argument from counsel, the court granted the petition.

The court determined that Christopher did not pay child support for at least the year 2011. The court also determined that Christopher had not stayed in contact with Cayden since his move to San Diego. The court emphasized that Christopher's failure to send a phone to Cayden, after it was suggested by the Indiana court, was highly relevant. The court noted, "So that's like a big deal to me, because if you had bought that phone in 2012 and had made those telephone calls over the last couple years, there's no way I could have found that you failed to communicate. But you didn't." The court further noted that Christopher had not sent any cards, letters, or pictures to Cayden, and his attempts at e-mail communication were no more than token efforts.

The court therefore found that Christopher had left Cayden in Natalie's care and custody for a period of one year without any provision for his support, and without communication from Christopher, with the intent to abandon him. The court further found that freeing Cayden would be in his best interests given his relationship to Robert

7

and Robert's interest in adopting. The court declared Cayden free of Christopher's custody and control and entered judgment accordingly. Christopher appeals.

DISCUSSION

I

A petition for freedom from a parent's custody and control may be granted where "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) The statute "shall be liberally construed to serve and protect the interests and welfare of the child." (§ 7801.)

The court is required to make its findings on the basis of clear and convincing evidence. (§ 7821.) "However '[t]hat standard is for the guidance of the trial court only; on review, our function is limited to a determination whether substantial evidence exists to support the conclusions reached by the trial court in utilizing the appropriate standard.' [Citation.]" (*In re B.J.B.* (1986) 185 Cal.App.3d 1201, 1211.)

" 'A reviewing court must accept as true all evidence tending to establish the correctness of the findings of the trial judge. All conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences must be indulged in to uphold the judgment. It is well settled that whenever a finding or judgment of the trial court is attacked as being unsupported, the power of the reviewing court begins and ends with the determination of whether there is any substantial evidence, contradicted or uncontradicted which will support the conclusions reached by the trial

court [citation]. All evidence most favorable to respondents must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed [citation].' " (*In re Brittany H.* (1988) 198 Cal.App.3d 533, 549.) " 'The appellant has the burden of showing the finding or order is not supported by substantial evidence.' " (*In re Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1011.)

Christopher contends the court erred in finding that he intended to abandon Cayden. " '[The] question whether such intent to abandon exists and whether it has existed for the statutory period is a question of fact for the trial court, to be determined upon all the facts and circumstances of the case.' [Citations.]" (*In re Brittany H., supra*, 198 Cal.App.3d at p. 550.)

"[The] failure to provide support[] or failure to communicate is presumptive evidence of the intent to abandon." (§ 7822, subd. (b).) Here, the court found that Christopher failed to communicate with Cayden after he moved to San Diego and failed to support Cayden for at least a year. Christopher does not appear to contest the former finding, and we conclude it was supported by the evidence. As to the latter, Christopher fails to offer any cogent argument or legal authority to support his apparent claim that the finding is not supported by substantial evidence.[3] We therefore treat the point as waived.

_____

[3]     Christopher's argument consists of the following two sentences: "Additionally, Christopher has paid significant child support, even if he was in arrears at some point. The petitioner did not establish that Christopher failed to support Cayden for a full year." Christopher also includes, without explanation, two citations to the record showing that

9

(See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)  The presumption therefore applies.

Even setting aside the presumption, the court's finding of intent is amply supported by the evidence introduced at trial.  Christopher was inconsistent in his visitation with Cayden, even in Indiana.  After Cayden moved to San Diego with Natalie, Christopher did not visit at all.  He sought court assistance to schedule one visit, but then he did not show up.  He did not schedule another visit.  Where, as here, a parent does not meaningfully exercise his right to visit, intent to abandon may properly be found.  (*In re Amy A.* (2005) 132 Cal.App.4th 63, 71.)  Christopher claims his decision not to visit was reasonable given Natalie's alleged lack of responsiveness over e-mail.  But that is merely an alternate interpretation of the evidence -- against the court's findings -- that we may not indulge.  (See *In re Brittany H., supra*, 198 Cal.App.3d at p. 549.)  Moreover, Christopher's own e-mail announcing he would not show up does not reference any alleged lack of responsiveness.  Christopher wrote, "I know how this must look and im sorry once again i didn't do what i said i was gonna do.  Its hard to explain so im not going to.  I got ahead of myself.  I dont have the money to make it out there right now." (Original capitalization and punctuation.)

---

Christopher had paid some child support.  Even on the merits, Christopher's discussion of the record is inadequate to show that the evidence did not support the trial court's finding.

10

Christopher's inadequate efforts to communicate with Cayden also support the court's finding that Christopher intended to abandon Cayden during the statutory period. (See *In re B.J.B., supra*, 185 Cal.App.3d at p. 1212 ["In determining a parent's intent to abandon, the trial court may consider not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of the effort under all of the circumstances [citation], as well as the quality of the communication that occurs."].) Most importantly, Christopher failed to avail himself of the opportunity to send a phone to Cayden to keep in contact with him. Though the evidence was contested whether Christopher attempted to send a phone, substantial evidence supports the court's finding that he did not send one until shortly before the petition was filed. Christopher's contention that sending the phone would have been an "idle act," which he was not required to do (see Civ. Code, § 3532), is merely a *post hoc* rationalization. Christopher chose to limit himself to e-mails to Natalie, which were largely generic questions regarding Cayden's well-being, rather than an effort to communicate with him or become involved in his life in a meaningful way.[4] These token efforts were insufficient. (See

---

[4] Christopher points out that some of his e-mails expressed the desire to visit Christopher, or to move to California at some point in the future to be closer to him. However, in order to fall within section 7822, "[t]he parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*In re Amy A., supra*, 132 Cal.App.4th at p. 68.) "[A] child cannot be abandoned and then put 'on hold' for a parent's whim to reunite. Children continue to develop, and the Legislature has appropriately determined a child needs a secure and stable home for that development." (*In re Daniel M.* (1993) 16 Cal.App.4th 878, 885.) "In other words, a child's need for a permanent and stable home cannot be postponed for an indefinite period merely because the absent parent may envision renewing contact with the child sometime in the distant future." (*Id.* at p. 884.) In any

11

§ 7822, subd. (b) ["If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents."].)

Christopher also did not send any cards, letters, gifts, or pictures to Cayden, even though Christopher had Cayden's address in San Diego. Although Christopher contends in his briefing that the protective order prevented him from mailing anything to Cayden, Christopher simply cites the protective order generally and does not explain how it would apply in this situation. Christopher's argument also contradicts his statements to the Agency, where he said he did not mail anything to Cayden because he did not think Natalie would give what he sent to Cayden. He did not mention the protective order. Christopher's argument is further undermined by the fact that Christopher mailed a phone to Cayden (twice, he contends) notwithstanding the protective order. We conclude the evidence supported the court's finding of intent to abandon.

II

Christopher further contends that the judgment freeing Cayden from his custody and control is void because a court commissioner presided in the trial court as a temporary judge. (See Code Civ. Proc., § 259, subd. (d).) A court commissioner may "[a]ct as temporary judge when otherwise qualified so to act and when appointed for that purpose, on stipulation of the parties litigant." (*Ibid.*) Christopher cites the California Rules of Court, rule 2.816, and argues that its notice and stipulation procedures were not

event, even if these e-mails could be interpreted as showing a lack of intent to abandon, they are not dispositive. The court was entitled to credit other evidence of Christopher's intent to abandon, as we discuss.

12

followed. However, "Rules 2.810-2.819 apply to attorneys who serve as court-appointed temporary judges in the trial courts. The rules do not apply to subordinate judicial officers . . . ." (Cal. Rules of Court, rule 2.810(a).) Court commissioners, as subordinate judicial officers, are not subject to that rule. (*Ibid.*; see Gov. Code, § 71601, subd. (i) [defining "subordinate judicial officer" to include court commissioners].)

As the authority cited by Christopher demonstrates, parties may impliedly stipulate to a court commissioner sitting as a temporary judge through their conduct. (*In re Horton* (1991) 54 Cal.3d 82, 91 ["[C]onduct short of an express oral or written stipulation may be tantamount to a stipulation that a court commissioner may sit as a temporary judge."].) "In fact, it has been held that merely by intending to have the subordinate judicial officer decide the case, the parties may impliedly confer temporary judge status on the officer even without their knowledge that a stipulation is required. [Citations.] 'Under the "tantamount stipulation" doctrine, the parties confer judicial power not because they thought in those terms; had they done so, the stipulation presumably would have been express. Rather, an *implied* stipulation arises from the parties' common intent that the subordinate judicial officer hearing their case do things which, *in fact*, can only be done by a judge.' [Citation.] The reasoning in this doctrine is simple: 'An attorney may not sit back, fully participate in a trial and then claim that the court was without jurisdiction on receiving a result unfavorable to him.' [Citation.]" (*In re Courtney H.* (1995) 38 Cal.App.4th 1221, 1227; original italics.)

Here, the record shows that Christopher consented to have a court commissioner hear Robert's petition. Christopher allowed the commissioner to preside over every stage

13

of these proceedings, including assuming jurisdiction from the Indiana court under the UCCJEA, conducting pretrial and trial proceedings, and rendering its decision. The court's minute orders prominently identified the presiding officer as a commissioner, and there is no evidence that Christopher or his counsel did not know her status.[5] Christopher's conduct was tantamount to a stipulation, and the judgment is valid. (See *In re Horton, supra*, 54 Cal.3d at p. 91; *In re Courtney H., supra*, 38 Cal.App.4th at p. 1227.)

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.

---

[5] The mere fact that the commissioner may be erroneously identified as a "judge" on the website of the San Diego Superior Court, or that written notice of assignment may not have been made at the outset of the proceedings, does not bear on that knowledge given the evidence in the record. Nowhere does Christopher contend that he or his counsel was actually unaware of the presiding officer's status as a court commissioner.

14