Filed 5/25/21  In re A.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B309354<br>(Los Angeles County<br>Super. Ct. No. 19CCJP05447) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>AR.M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Pete R. Navarro, Temporary Judge. Affirmed.

Law Offices of J. Jeff Chambliss and J. Jeff Chambliss for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Ar.M. (father) repeatedly sexually abused his son, A.M. As a result of father's sexual abuse, the juvenile court assumed jurisdiction over A.M., denied father reunification services, and ultimately granted mother sole custody of A.M. A criminal protective order and civil restraining order prevented father from contacting A.M., and father had no visits during the pendency of the juvenile court proceedings.

Father filed a Welfare and Institutions Code[1] section 388 petition in which he sought full custody of A.M., despite court orders preventing him from contacting A.M. Father, who never acknowledged his conduct and never attempted to reform, identified no changed circumstances and no evidence supporting the conclusion that it was in A.M.'s best interest to award father full custody and place A.M. in the home of the person who sexually abused him. On appeal, we reject father's argument that the juvenile court erred in summarily denying his section 388 petition.

Father also argues the following: (1) The commissioner should have stepped aside when father requested a judge at the October 21, 2020 hearing; and (2) the juvenile court erred in requiring father to participate in a hearing remotely by WebEx under a protocol implemented to address the COVID-19

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

pandemic. Neither argument has merit. Finally, father's argument that a judge was required to sign the commissioner's order removing A.M. from father's custody is not cognizable on appeal because father did not timely appeal from the relevant order.

We affirm the order summarily denying father's section 388 petition. We also affirm the judgment terminating juvenile court jurisdiction.

## BACKGROUND

A.M. was born in 2007. Mother and father were divorced in 2015. Their child, A.M., lived with father until approximately August 2, 2019 when A.M. revealed that father sexually abused him. On August 6, 2019, police arrested father based on the sexual abuse of A.M. Father was charged with lewd and lascivious acts with a child under 14. The Los Angeles County Department of Children and Family Services (DCFS) reported that if father were convicted, the criminal court could sentence him to prison for life.

On August 4, 2019, A.M. told police that father sexually abused and molested him for five years. When A.M. was five years old father slept with him in the same bed, and father always slept naked. Father would touch and caress A.M.'s thighs. When A.M. was six and seven years old, father touched him on a daily basis. Father asked A.M. to kiss father's penis. Father also put his penis in A.M.'s mouth approximately six times. A.M. reported that father would masturbate in front of A.M. One time, A.M. saw father ejaculate and asked if the emission was milk. Father responded, "No, this is how you were made." Approximately 12 times, father rubbed his hands on A.M.'s penis and father's penis simultaneously. A.M. reported

3

that he sometimes woke up naked and was suspicious that father had removed his clothing while he slept.

Also on August 4, 2019, mother told police that father wrote her love letters when mother was 13 years old. Mother later reported that father was 20 years older than she, and that they married when mother was 20 years old.

Police searched father's house August 6, 2019. The police removed flash drives, laptops, hard drives, cameras, recording equipment, and firearms. Two of father's flash drives contained videos of child pornography. "The videos included young boys having anal sex, masturbating, touching each other's penises, and performing oral sex on each other." The videos also showed an adult inserting his penis in a young boy's mouth.

On August 6, 2019, A.M. and mother called father at the police's request. A.M. directly confronted father about the sexual abuse, and father did not deny it. When A.M. asked father why he made him " 'suck his penis in bed,' " father did not deny that conduct.

A forensic interviewer interviewed A.M. on August 7, 2019. A.M. indicated that when he was six years old, he wanted to play on an iPad and father insisted that A.M. put his mouth on father's penis. Father "made it sound like it was normal." A.M. said that father touched his leg, thigh, hips, and "around" his genitals. A.M. would push father away, but father would continue. Father touched A.M.'s penis when A.M. was in bed. A.M. was not naked; Father was naked.

A.M. told the forensic interviewer that he remembered waking up with no clothes, and when he asked father, father responded that A.M. had a "bad habit of taking off" his clothes. A.M. said that father put his penis in A.M.'s mouth six times.

4

Father started doing this when A.M. was six and a half or seven years old.  Father also put his mouth on A.M.'s penis.  As he had told the police, A.M. told the interviewer that father masturbated in front of A.M.  One time, father ejaculated and told A.M., "[T]his [is] just how you were made."  A.M. saw father look at naked bodies online.  A.M. denied that father sodomized him, but he was not certain because he was a "deep sleeper" and thought father might have "drugged" him.

A.M. told the interviewer that he did not want to attend the school father had selected for him to attend.  A.M. wanted to go to the school where his friends attended.

On August 7, 2019, police reported the incident to DCFS.  A.M. reported a description of father's conduct to a social worker consistent with what he told to the police and the forensic interviewer.  Father's attorney told a social worker that father refused to answer any questions because of his pending criminal case.

On August 9, 2019, the Los Angeles County Superior Court issued a temporary criminal protective order protecting A.M.  A permanent criminal protective order subsequently issued protecting A.M. until August 8, 2022.  On August 28, 2019, the juvenile court entered a restraining order protecting A.M. and mother from father.  The juvenile court entered a permanent restraining order on December 11, 2019.  The order gave father no visitation.   The permanent restraining order was set to expire on December 11, 2022.

1. ***DCFS files a petition and the juvenile court assumes jurisdiction over A.M.***

On August 22, 2019, DCFS filed a petition naming A.M., who was then 11 years old.  The petition alleged that father

"repeatedly sexually abused the child for a period of 7 years by forcing the child to orally copulate the father's penis while the father fondled the child's thighs, legs and buttocks.  On prior occasions, the father exposed the father's penis and masturbated in the presence of the child. . . . On prior occasions, the father fondled the child's penis and masturbated the child."  Father also rubbed his naked body against the child and orally copulated the child's penis.

On August 23, 2019, the juvenile court ordered A.M. released to mother under DCFS's supervision.  The court further ordered no visitation for father unless the criminal protective order were modified.

The juvenile court sustained the petition on December 11, 2019.[2]  The court again ordered no contact between father and A.M.  Specifically, the court ordered:  "No visits for father so long as criminal protective order/lawful restraining order exists."

The court ordered no reunification services for father pursuant to section 361.5, subdivision (b)(6).  Section 361.5 provides in pertinent part:  Reunification services are not required when "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian."  (§ 361.5, subd. (b)(6)(A).)

A.M. told social workers he wanted no contact with father.

---

[2] The record does not include a reporter's transcript of the jurisdictional hearing.  The minute order reflects that father did not testify at the jurisdictional hearing.

6

## 2. *A.M. felt safe with mother*

A.M. repeatedly told social workers he felt safe living with mother. A.M. liked the school he attended while in mother's custody, and made new friends. Mother walked A.M. to school every day. Social workers reported A.M. was safe in mother's home. Mother was able to provide for A.M.'s health and education. A social worker observed a bond between mother and A.M. A.M. reported that mother took "good care" of him. A.M. "thriv[ed] in the home and care of his mother."

## 3. *Father obtains new counsel and files a section 388 petition*

On September 18, 2020, father retained new counsel. The minute order from the September 18, 2020 hearing indicated that the section 364 hearing, was set for October 21, 2020.[3] The minute order required father "to be available to participate via WebEx."

---

[3] Section 364, subdivision (c) provides: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary."

On October 13, 2020, father filed a petition to change a court order pursuant to section 388. Father requested "[f]ull custody of [A.M.] with Father." Father stated that the requested action would be better for A.M. because "Mother has exposed [A.M.] to the risk of Co-Vid infection." Father stated that "a witness . . . can testify as to inaccuracies in the testimony of [a person who testified at the jurisdictional hearing] and a motive to fabricate on [A.M.'s] part." Father did not further identify the witness or the challenged testimony.

On October 15, 2020, the juvenile court denied the section 388 petition without a hearing.

Five days after the juvenile court denied his petition, father filed N.S.'s declaration in support of his section 388 petition. N.S. declared that she was father's girlfriend and had been introduced to A.M. She observed A.M. "to be very comfortable around his father, smiling often." She observed them joking and working together on A.M.'s homework. She heard A.M. say he was not afraid of father. She also observed A.M. and father argue about where A.M. would attend school. "It was obvious to me [N.S.] that [A.M.] was extremely upset and unhappy about his father's decision to send him to private school." A.M. said he would " 'do ANYTHING' " not to attend the school father wanted him to attend. The declaration does not reflect that N.S. was aware of the basis for jurisdiction in this case.

**4.      *The juvenile court continues the section 364 hearing***

The section 364 hearing was scheduled for October 21, 2020. On September 25, 2020, father was served notice of the hearing. The notice DCFS served on father included a flyer stating that due to COVID-19, the juvenile court was conducting

8

remote hearings and that the parties could participate by telephone or videoconference.

A status review report dated October 21, 2020 indicated that mother continued to parent A.M. and that they shared a bond. DCFS reported that "[a]s with most children during this COVID19 Pandemic, he [A.M.] has become bored with not having in-person contact with friends and even family." Mother "scheduled a couple of outings and a vacation to relieve [A.M.] of the stress of the isolation caused by the COVID19 Pandemic." A.M. "has remained healthy and CSW observes he is comfortable in mother's care and he has extended family relatives who have continued to be supportive . . . ."

On October 21, 2020, at the time scheduled for the hearing, counsel for father requested that he and father appear in the courtroom rather than appearing remotely. The juvenile court denied the request. The court found no extraordinary circumstances existed to allow father to appear in person. Counsel and father appeared via WebEx.

Father's counsel stated that he did not stipulate to the matter being heard by a commissioner and requested that the matter be heard by a judge. Commissioner Navarro, who had presided over the entire case, denied the request to transfer the case to another judicial officer.

The court granted father's requested continuance of the section 364 hearing and continued the hearing to November 6, 2020. The court again ordered the parties to appear via WebEx.

### 5. *The juvenile court holds a section 364 hearing*

On November 6, 2020, the juvenile court held a section 364 hearing to determine whether continued juvenile court supervision was necessary. Father's counsel argued that father

9

had concerns about A.M.'s safety in mother's custody because mother exposed A.M. to COVID-19 and mother may leave the United States. Counsel provided no evidence to support these contentions.

The juvenile court found no need for continued dependency jurisdiction. "The mother has shown that she has a protective capacity to protect this child . . . ." The court found "because of the significant trauma, physical, psychological trauma that this child suffered," that visits with father would be detrimental.

### 6.    *Final judgment*

On November 6, 2020, the court issued a final judgment awarding mother full custody of A.M. The juvenile court denied father visitation. The judgment indicates that a criminal protective order and a restraining order were in effect.

Father filed a notice of appeal on November 25, 2020. The notice indicates that father was appealing from the denial of his section 388 petition and the judgment terminating jurisdiction.

## DISCUSSION

### A.    Father Demonstrates No Error In the Summary Denial of His Section 388 Petition

Father contends the juvenile court erred in denying his section 388 petition without setting a hearing. Father cites no legal authority in support of his argument, and therefore has forfeited the argument. (*In re A.C.* (2017) 13 Cal.App.5th 661, 672 [' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' [Citation.]"].) Father also fails to summarize any of the relevant facts in contravention

10

of California Rules of Court, rule 8.204(a)(2)(C), which requires that an appellant's opening brief "[p]rovide a summary of the significant facts . . . ."

On its merits, father's argument fares no better. "A section 388 petition must show a change of circumstances and that modification of the prior order would be in the best interests of the minor child. [Citations.] To support a section 388 petition, the change in circumstances must be substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) If the section 388 petition does not make a prima facie showing of a change of circumstances since the prior order, and that a modification of the order is therefore in the child's best interest, the petition may be denied without an evidentiary hearing. (*In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 323; *In re Angel B.* (2002) 97 Cal.App.4th 454, 461; Cal. Rules of Court, rule 5.570(d) [petition may be denied ex parte if it does not show that the change would promote the child's best interests].) This court reviews the juvenile court's decision not to hold a hearing for an abuse of discretion. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.) The juvenile court did not abuse its discretion.

First, the juvenile court could not award father full custody of A.M. A criminal protective order, as well as a civil restraining order, prohibited father from having any contact with A.M., much less full custody over A.M.

Second, father demonstrated no change of circumstances, a necessary element of a section 388 petition. Father, moreover, fails to cite any authority allowing this court to consider N.S.'s declaration, which he filed only after the juvenile court denied father's petition. In any case, it does not show any change in circumstances.

11

Third, father failed to show that it would be in A.M.'s best interest to award him full custody of A.M., the second requirement of a section 388 petition. In short, the section 388 petition was frivolous because father presented no evidence or cogent authority in support of either element of his petition.

**B.** **Father Demonstrates No Error in the Denial of His October 21, 2020 Request for a Judge Rather Than a Commissioner to Preside**

Commissioner Pete R. Navarro presided over the entire case. On October 21, 2020, father objected to Commissioner Navarro's participation "for this hearing," meaning the October 21, 2020 hearing.[4] On appeal father argues that the commissioner sat as a referee, not a temporary judge, and as a referee, had no jurisdiction to hear the case. Father recognizes that if the commissioner sat as a temporary judge, the commissioner would have the same authority as a judge. *In re Brittany K.* supports father's acknowledgment; it states: " '[a] temporary judge has full judicial powers, and his [or her] orders are as final and nonreviewable as those of a permanent judge.' [Citation.]" (*In re Brittany K.* (2002) 96 Cal.App.4th 805, 812.) The powers of a referee, however, are more limited. (*Id.* at p. 811.)

Father's argument lacks merit for two independent reasons. First, he impliedly waived any challenge to the commissioner by failing to make a timely challenge. (*In re Brittany K.*, *supra*, 96 Cal.App.4th at p. 813; *In re Horton* (1991) 54 Cal.3d 86, 98 [full participation in proceedings and treatment

---

[4] Father's counsel stated, "We're not stipulating to a commissioner for this hearing."

12

of "the commissioner as competent to rule on matters which rest solely in the discretion of a superior court judge" constitutes an implicit stipulation to the commissioner]; *In re Courtney H.* (1995) 38 Cal.App.4th 1221, 1227.)  Father participated in the proceedings before Commissioner Navarro beginning on August 23, 2019.  He did not object to the Commissioner until over a year later, on October 21, 2020.  It was too late.  (*In re Brittany K.*, *supra*, at p. 813.)

Second, father's premise that the commissioner sat as a referee and not as a temporary judge is incorrect.  By order dated November 27, 2019, signed by Presiding Judge Kevin C. Brazile, and effective January 2, 2020, "each commissioner of [the Los Angeles County Superior] Court, in addition to his or her assignment, if any, is designated and assigned as Judge Pro Tempore of the Juvenile Court."  (Super. Ct. L.A. County, Jud. Order No. 2020-JUD-005-00, 2020 Juvenile Court Assignment Order (Nov. 27, 2019) eff. Jan. 1, 2020.)  At the time father objected to the commissioner, the commissioner sat as a temporary judge, not as a referee.

## C.   Father Does Not Show He Had a Right to Be Personally Present During the October 21, 2021 Hearing and Even if He Did, Father Demonstrates No Prejudice

Father argues that the juvenile court erred in refusing to allow him to appear personally at the October 21, 2020 hearing.  Specifically, father contends:  "While it's perhaps laudable due to the Pandemic that apparently all the other attorneys involved in this case had agreed with the Los Angeles County Superior Court to handle Dependency Hearings through WebEx, absent an Order

13

from the Presiding Judge and notice, Petitioner had a right to personally appear."

Father's argument is based on incorrect premises. There was both an order from the Presiding Judge and notice to father. At the time of the hearing there was an order from the Presiding Judge of the Superior Court stating: "Judicial officers are urged to avoid in-person hearings to the greatest extent possible and to use technology to conduct hearings and other court proceedings remotely for the duration of the state of emergency related to the COVID-19 pandemic. However, when the interests of justice require, judicial officers retain the discretion to require in-person appearances." (Super. Ct. L.A. County, Gen. Order No. 2020-GEN-023-00, Administrative Order of the Presiding Judge re COVID-19 Pandemic (Oct. 9, 2020) § 1(e), p. 2.)

In addition, the juvenile court's minute order dated September 18, 2020 recites: "364 Judicial Review Hearing is set to [*sic*] October 21, 2020 at 8:30 AM in Edmund D. Edelman Children's Court Dept.-413. DCFS is to provide notice. Father is ordered to be available to participate via WebEx." (Boldface omitted.) On September 25, 2020, DCFS served father with notice of the October 21, 2020 hearing. The notice also states: "Due to Covid-19, hearing dates are subject to change. In addition, courts are conducting remote hearings, which means that you do not need to appear in court, if you are able to participate by telephone or video conferencing."

Assuming arguendo that the juvenile court should have allowed father to participate in person, father demonstrates no prejudice. Father and his counsel participated in the hearing through WebEx. The only ruling the juvenile court made was to grant father's request for a continuance of the section 364

14

hearing.  Thus, father obtained the relief he requested on the only issue considered at the hearing.

### D.     Father's Purported Challenge to the Removal Order Is Not Cognizable in this Appeal

Section 249 states, "No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court."  Relying on section 249, father argues that the commissioner's order removing A.M. from father's custody was void because a judge did not review the order.

Father's challenge is not cognizable in this appeal.  " 'A challenge to the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' [Citation.]" (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.)  "The rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders." (*Ibid*.)  A parent who fails to appeal from a removal order forfeits the right to challenge that order and the issue cannot be considered in an appeal from a subsequent order. (*Id*. at p. 359.)  Commissioner Navarro ordered A.M. removed from father's custody on December 11, 2019.  Father never appealed from that order, and his appeal from the denial of his section 388 petition and from the judgment dated November 25, 2020, does not resurrect a foregone appeal from the December 11, 2019 order removing A.M. from father's custody.

Father's statement that the commissioner's order was void also lacks merit.  "[T]he statute says a referee's removal order is not 'effective' until approved by a judge (§ 249); it does not say the order is 'void' or 'invalid' if not approved." (*In re Jesse W.*,

15

*supra*, 93 Cal.App.4th at p. 357.) "Because a referee acts 'with the same powers as a judge of the juvenile court' (§ 248), with or without a judge countersigning, and the countersignature does not reflect substantive review by the judge but only attests to the order's authenticity [citation], we reject the notion that lack of compliance with section 249 deprives a referee of fundamental jurisdiction and, in turn, invalidates further orders in the proceedings." (*In re Jesse W.*, *supra*, at p. 359.)

## DISPOSITION

The order denying father's Welfare and Institutions Code section 388 petition is affirmed. The judgment is affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.